IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MICHAEL HUFF, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 16-2740 |
| | : | |
| QUAKERTOWN COMMUNITY | : | |
| SCHOOL DISTRICT, | : | |
| Defendant | : | |

# M E M O R A N D U M

**STENGEL, C. J.**                                                            September 12, 2017

This action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq*. and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq*. The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.

Defendant Quakertown Community School District has filed a motion to dismiss the second amended complaint, and Plaintiff Michael Huff has responded. For the following reasons, I will deny the defendant's motion in its entirety.

## I. BACKGROUND[1]

The second amended complaint alleges the following: Mr. Huff began working for the defendant in 2005 as an instructional support, regular education teacher at Quakertown High School. In February of the 2005-2006 school year, the plaintiff was

---

[1] The facts are gleaned from the amended complaint and any extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

offered and accepted an administrative position as a special education supervisor for the school district.

Due to the nature of working in a special education environment, the plaintiff suffered an anxiety attack and was hospitalized. The plaintiff subsequently has received regular mental health treatment for his anxiety.

Following his anxiety attack, the plaintiff met with Dr. James Newcomer, who was the defendant's assistant superintendent at the time. Following their meeting, the plaintiff requested a transfer out of special education in order to accommodate his anxiety. Within a week of the plaintiff's request, the plaintiff was transferred back to his original position of instructional support, regular education teacher at Quakertown High School. It is not contested by the parties that the plaintiff was, at all relevant times, disabled within the meaning of the ADA and the PHRA.

During the 2008-2009 school year, the plaintiff worked as a regular education/cyber education teacher at Quakertown High School. The following year, the plaintiff worked as a regular education/cyber education teacher at Strayer Middle School.

In March 2011, Cindy Lipinski, who was the principal at Strayer Middle School, asked the plaintiff if he was interested in teaching special education at the Middle School for the upcoming school year, 2011-2012. The plaintiff notified Ms. Lipinski of his anxiety condition and stated he would not be able to handle the mental rigors and unique stress of teaching special education. Despite the notification of his disability and his request not to be placed in a special education position, Ms. Lipinski notified the plaintiff

2

in March 2011 that he would be placed in a special education teaching position at Strayer Middle School for the following school year.

During the 2011-2012 school year, the plaintiff was placed on a "performance improvement plan." The plaintiff's supervisors regularly visited his classroom without warning to observe the plaintiff's classroom. Other special education teachers without disabilities and/or who had not requested accommodations for a disability were not subjected to the same treatment. At the end of that school year, the plaintiff requested that the defendant accommodate his disability by transferring him out of the special education position and placing him back into a regular teaching position because the position in special education was exacerbating his anxiety. The defendant denied the plaintiff's request. Ms. Lipinski told the plaintiff that due to the district's policy, individuals on performance improvement plans could not be transferred.

The plaintiff remained in the special education position and his anxiety worsened. Because of his worsening anxiety, the plaintiff utilized a paid sick leave sabbatical for the 2013-2014 school year.

Upon his return from sabbatical in August 2014, the plaintiff requested the defendant accommodate him by transferring him from special education to a regular education position. The plaintiff's treating physician had placed restrictions on the plaintiff due to his worsened anxiety and only cleared him to return with part-time hours if he was to remain in a special education position. The plaintiff was also able to return in a full-time non-special education position, which was available and for which the plaintiff was qualified. Although the plaintiff had been on sabbatical and not working

3

during the 2013-2014 school year, the defendant denied the plaintiff's request, telling the plaintiff that it was the district's policy not to transfer an individual who was on a performance improvement plan. The defendant instead offered the plaintiff a part-time position in a special education setting.

Although he did not consider the part-time special education teacher position to be a reasonable accommodation because it required a significant salary decrease from a full time position, the plaintiff accepted the position for the 2014-2015 school year. This position was the only offer made to the plaintiff by the defendant.

The plaintiff remained on a performance improvement plan during the 2014-2015 school year. The plaintiff's supervisors regularly came without warning to observe his classroom, despite not subjecting other special education teachers without disabilities and/or those who had not requested accommodations to the same treatment.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In recent rulings, however, the Supreme Court has rejected language in Conley stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561. Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," Twombly, 550 U.S. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss." Id. at 679 (emphasis added). In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual

allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief. Id. at 680 (emphasis added).

### III. DISCUSSION

#### A. **Plaintiff's Failure to Accommodate Claim**

The defendant first argues that the second amended complaint should be dismissed because the plaintiff fails to allege adequately a failure to accommodate claim under the ADA and PHRA. I do not agree.

The ADA and the PHRA are analyzed under the same legal standard. Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996); Ripple v. Olympic Steel, Inc., 2014 WL 509200, at *1 (M.D. Pa. Feb. 10, 2014) ("Our analysis of Plaintiff's ADA claim applies with equal force to his PHRA claim."). To state a claim of action for a failure to accommodate under the ADA, a plaintiff must show that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. Williams v. Philadelphia Housing Auth. Police Dep't., 380 F.3d 751, 772 (3d Cir. 2004) (quoting Taylor v. Phoenixville School Dist., 184 F.3d 296, 319-20 (3d Cir. 1999).

In his second amended complaint, the plaintiff asserts facts sufficient to render a failure to accommodate claim plausible. First, the plaintiff demonstrates that the defendant knew of the plaintiff's condition because he was previously hospitalized for that condition and had made multiple requests regarding his disability throughout his

employment with the defendant. Second, the second amended complaint shows that the plaintiff made multiple requests to transfer out of a special education position into a regular full-time teaching position because of his disability.

As for the third and fourth elements, the plaintiff has asserted factual allegations sufficient to show the plausibility of those elements. The second amended complaint asserts that the plaintiff's request for accommodation specified a transfer from special education to an available full-time regular position. Although there were positions available in a full-time regular education setting and the plaintiff was qualified for such a position, the defendant only offered a part time position in special education. As a result, the plaintiff experienced a significant wage loss.

Accepting the factual assertions in the plaintiff's second amended complaint as true, the plaintiff has set forth "sufficient factual matter" to show that each element of the reasonable accommodation claim is facially plausible. See Fowler v. UMPC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Accordingly, because the plaintiff has adequately stated a claim under the ADA and the PHRA for failure to accommodate, I will deny the defendant's motion to dismiss these claims.

### B. Plaintiff has Exhausted Administrative Remedies

The defendant next argues that the plaintiff has failed to exhaust the administrative remedies available. Specifically, the defendant argues that the plaintiff failed to assert his hostile work environment claim before the Equal Employment Opportunity Commission ("EEOC"). I do not agree.

Before filing a lawsuit, a plaintiff must exhaust his administrative remedies by filing a timely discrimination charge with the EEOC. 42 U.S.C § 2000e-5. However, "once a discrimination charge has been filed, the scope of a judicial complaint is not limited to the four corners of the administrative charge." Duffy v Massinari, 202 F.R.D. 437, 440 (E.D. Pa 2001). The parameters of a subsequent private action in the courts are defined by the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination. Hicks v. ABT Assoc., Inc., 572 F.2d 960, 963 (3d Cir. 1978); see also Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1986). The appropriate test for whether a plaintiff has failed to exhaust administrative remedies is not whether the judicial complaint mirrors the plaintiff's earlier administrative complaint, but rather "whether the acts alleged in the subsequent … suit are fairly within the scope of the prior EEOC complaint." 82 F.3d at 1295 (quoting Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984)).

Here, there is enough factual overlap between the EEOC charge and the plaintiff's hostile work environment claim for it to reasonably have grown out of the administrative charge. The EEOC charge specifically mentions that the defendant placed the plaintiff on a "performance improvement plan" and that his accommodation request was denied because of that plan. Further, the facts supporting the plaintiff's discrimination claim are the same facts that will be used in analyzing a hostile work environment claim. Therefore, the hostile work environment claim shares a sufficient nexus with the facts asserted in the EEOC charge to be within the scope of that investigation. Accordingly, I will deny the defendant's motion to dismiss this claim.

## C. Plaintiff's Hostile Work Environment Claim

The defendant finally argues that the second amended complaint should be dismissed because the plaintiff fails to allege adequately a hostile work environment claim. Again, I must disagree.

To state a claim of action for hostile work environment under the ADA, a plaintiff must allege that: (1) he is a qualified individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action. Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999). In considering whether an environment is hostile, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); see also Caver v. City of Trenton, 420 F.3d 243, 262-63 (3d Cir. 2005).

Here, the second amended complaint alleges that in considering the totality of the circumstances, the plaintiff's work environment was sufficiently hostile as to alter the conditions of the plaintiff's employment and create an abusive environment. The second amended complaint asserts that the plaintiff remained on a performance plan after returning from a year-long sabbatical and that the defendant continued to scrutinize the

plaintiff's performance via regular visits to the plaintiff's classroom without warning. The second amended complaint additionally alleges that the defendant did not subject other special education teachers without disabilities to the same scrutiny.  Further, the defendant did not subject other teachers who had not requested accommodations to the same scrutiny.

The defendant argues that these actions were not physically threatening or humiliating, an unreasonable interference, and did not rise to the level of preventing the plaintiff from doing his job.  However, distinguishing factual assertions from legal conclusions, the court must accept all factual allegations in the second amended complaint as true and must make all inferences in favor of the plaintiff.  The plaintiff's second amended complaint alleges facts suggestive of the proscribed conduct and it contains enough factual matters to suggest the required elements of the hostile work environment claim.  Therefore, I will dismiss the defendant's motion to dismiss this claim.

An appropriate Order follows.